**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Unisource Worldwide, Inc.,

              Plaintiff,

v.

Troy Swope, et al.,

              Defendants.

No. CV-12-02036-PHX-NVW

**ORDER**

Before the Court are Plaintiff's Second Motion to Find Defendant Troy Swope in Contempt of Court (Doc. 162) and Plaintiff's Memorandum of Law (Doc. 191-1), the Response, and the Reply.  Plaintiff's Second Motion to Find Defendant Troy Swope in Contempt of Court ("Plaintiff's Motion") will be denied.

I.      **BACKGROUND**

On September 25, 2012, Unisource Worldwide, Inc. ("Plaintiff"), a company involved in the marketing, selling, and distribution of packaging, paper, and facilities supplies products throughout the United States and in other countries, brought suit against Troy Swope ("Defendant" or "Swope"), a former employee.  Plaintiff's Second Amended Complaint (Doc. 64) alleges such conduct by Swope as fraudulently misrepresenting business expenses, failing to return Plaintiff's property, misappropriating trade secrets, destroying evidence, violating restrictive covenants, and making false statements that harmed Plaintiff's interests.  (Doc. 64 at 2-3.)  On November 13, 2013, the Court entered Plaintiff and Swope's Stipulated Preliminary Injunction as to

Defendant Troy Swope ("Preliminary Injunction") (Doc. 38).   That Preliminary Injunction provides in part that:

> 1.  Within seven (7) days of the entry of this Order, Swope shall return to Unisource any trade secrets and other confidential and/or proprietary information or other property belonging to Unisource (including confidential and/or proprietary information or other property of Unisource incorporated into other documents or used in another form), in both hard copy and electronic form, that he has not already returned to Unisource and/or shall provide an Affidavit to Unisource that he has returned all such property of Unisource in his possession.
>
> 2.  Swope shall refrain from any further destruction of Unisource's property or spoliation of material evidence.
>
> . . .
>
> 6.  Through March 10, 2014, Swope shall not compete, directly or indirectly, with the Business of Unisource (as defined in [Swope's employment contract] by performing the type of activities he performed during the last year of his employment with Unisource anywhere in the United States of America.   Notwithstanding the foregoing, Unisource and Swope shall in good faith negotiate an agreement regarding the job duties that Swope can perform that are not in violation of the [employment contract.]

(Doc. 38 ¶¶ 1, 2, 6.)  The "Business of Unisource" is defined as "designing, engineering, manufacturing, selling, distributing or otherwise providing or creating packaging products, supplies, systems and/or equipment."  (Doc. 38 at 5.)

Plaintiff now contends that, notwithstanding his stipulation, Swope has violated the terms of the Preliminary Injunction in a manner that merits draconian sanctions. According to Plaintiff, Swope's transgressions fall into three categories: (1) selling packaging that competes with Plaintiff's business; (2) misleading Plaintiff about his activities and failing to negotiate a new position that comports with Plaintiff's requirements; and (3) destroying material evidence.  (Doc. 191-1 at 1.)  Accordingly, Plaintiff requests that the Court: (1) hold Swope in civil contempt; (2) enter against Swope a permanent injunction of no less than eighteen months; (3) enter a default judgment on liability against Swope; and (4) award Plaintiff its attorneys' fees and costs incurred as a result of Swope's violation of the Preliminary Injunction.  (*Id.* at 1-2.)

- 2 -

1    II.    **LEGAL STANDARD**

2          "Civil contempt . . . consists of a party's disobedience to a specific and definite

3    court order by failure to take all reasonable steps within the party's power to comply." *In*

4    *re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.

5    1993).  While subjective beliefs or intent do not factor into the contempt analysis, *see In*

6    *Re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003), "'[s]ubstantial compliance' with the court

7    order is a defense to civil contempt, and is not vitiated by 'a few technical violations'

8    where every reasonable effort has been made to comply."  *In re Dual-Deck*, 10 F.3d at

9    695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th

10   Cir. 1982)).

11         To establish contempt, "the moving party must show by clear and convincing

12   evidence that the nonmoving party violated the court order beyond substantial

13   compliance, and that the violation was not based on a good faith and reasonable

14   interpretation of the order."  *B2B CFO Partners, LLC v. Kaufman*, No. CV-09-2158-

15   PHX-JAT, 2012 WL 1067904, at *2 (citing *Wolfard Glassblowing Co. v. Vanbragt*, 118

16   F.3d 1320, 1322 (9th Cir. 1997)).  Only when the moving party has satisfied its burden

17   does the nonmoving party have to prove its inability to comply.  *Id.*

18         "[T]he power to punish for contempts is inherent in all courts."  *Chambers v.*

19   *NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505, 510

20   (1874)).  Further, a court has the discretion to fashion a sanction when faced with

21   contempt or other conduct that abuses the judicial process.  *Id.* at 44-45.  Depending on

22   the circumstances of an action, sanctions ranging from an assessment of attorney's fees to

23   the dismissal of a lawsuit may be appropriate.  *Id.* at 45 (citations omitted).

24   III.   **ANALYSIS**

25         Plaintiff contends that Swope violated several provisions of the Preliminary

26   Injunction after it was entered on November 13, 2012.  Since Plaintiff requests that

27   Swope be held in contempt for conduct in violation of that Preliminary Injunction,

28   Swope's prior actions cannot be the basis for sanctions.  Plaintiff's concerns will each be

1    addressed in turn.

2       **A.   Competing with Plaintiff's Business**

3       Plaintiff argues that Swope violated the Preliminary Injunction by competing
4    directly with Unisource.  The Court has ruled that the covenants not to compete signed by
5    other defendants in this action are facially invalid (*see* Doc. 220), and as Swope's non-
6    compete covenant is broader than the others (*see* Doc. 64-1 at 3), it too is facially invalid.
7    That, however, does not negate the validity of the Preliminary Injunction for the period
8    for which it was in effect.  That said, it is not certain that the language in paragraph six of
9    the preliminary injunction—the provision on indirect or direct competition with
10   Plaintiff's business ("the competition provision")—is clear and specific enough to
11   support a contempt remedy.  *See Vertex Distrib.*, 689 F.2d at 889.  Even assuming that
12   the language of the Preliminary Injunction's competition provision is specific enough to
13   be enforceable, Plaintiff's papers do not present clear and convincing evidence that
14   Swope failed to substantially comply with the requirements of the Preliminary Injunction.

15      Plaintiff contends that Swope violated the competition provision by:
16   (1) developing and/or selling hula hoop and toy packaging through Sprig Tech, LLC;
17   (2) taking steps to create the sustainable company Footprint; (3) traveling to South Africa
18   to meet with an equipment manufacturer about designing packaging equipment; and
19   (4) using Defendant Dynamic Imaging + Distribution, LLC as a front for selling
20   packaging.  First, at the times Plaintiff contends that Swope was competing through Sprig
21   Tech, LLC ("Sprig Tech"), Sprig Tech was not yet fully realized—it had no final
22   business plans, facilities, or website, had not manufactured any products, and had not
23   made any sales.  (Doc. 196 at 157:7-9, 167:13-17, 218:13-21.)  When running, Sprig
24   Tech will focus on the manufacturing and selling of products out of the Sprigwood
25   material, not on the making of packaging.  (*Id.* at 92:20-93:10, 142:2-3.)   In the
26   meantime, one of Sprig Tech's owners, Kyle Aguilar, stated that Sprig Tech was not
27   presently competing with Plaintiff and that Swope worked in strategy and product sales,
28   selling products made from materials developed prior to his joining Sprig Tech.  (*Id.* at

105:2-6, 156:21-157:6, 177:10-20.)  Aguilar explained that Swope was not involved in any sale of hula-hoop packaging, and the lone e-mail from Swope mentioning hula-hoop packaging does not provide clear and convincing evidence of competition.  (*Id.* at 324:14-325:3, 326:4-13, SPRIG000290.)  Further, Aguilar clarified that while he allowed Swope to do presentations for him regarding packaging options to demonstrate Swope's skillset, Aguilar "shied away" from actually allowing Swope to work on any packaging for him or Sprig Tech.  (*Id.* at 279:5-280:25.)  And while Swope may have been involved with laying the groundwork for potential sales of DVD cases—which may well not constitute "packaging"—no such sale has been completed.  Indeed, the only potential customer Aguilar could identify was not even seeking to buy packaging but was instead seeking to buy 3D glasses made with Sprigwood.

Second, Plaintiff has put forth no evidence about Swope's alleged involvement with Footprint.  Aguilar indicated that Swope was not among the individuals discussing the formation of Footprint.  (*Id.* at 220:17-221:4)  Third, while as summarized in Plaintiff's Motion there is some evidence suggesting that Dynamic Imaging + Distribution, LLC serves as a front for Swope's packaging sales (*see* Doc. 191-1 at 8 n.6), there is not clear and convincing evidence that such is the case.  Finally, there is insufficient evidence to conclude that Swope's trip to South Africa violated the Preliminary Injunction.

Two independent considerations confirm the conclusion that Plaintiff has not established any significant violation of the Preliminary Injunction's competition provision by Swope.  First, Plaintiff's evidence does not speak to Swope's activities during his final year of employment with Plaintiff.  It does not suffice to look at the definition of the "Business of Unisource."  The Preliminary Injunction is fairly read to preclude Swope from doing the types of activities he did when he worked for Plaintiff and thereby competing with Plaintiff; the Preliminary Injunction does not preclude Swope from performing all of the activities that fall within the broadly-defined Business of Unisource.  The range of activities Swope engaged in for Plaintiff is not established by

1   the evidence accompanying Plaintiff's Motion, rendering it nearly impossible to
2   determine whether Swope was engaging in the same type of activities for another
3   company in a manner that violated the Preliminary Injunction.  Second, much of the
4   conduct that Swope appears to have engaged in could potentially qualify as preparing to
5   compete, as opposed to actually competing.  (*See* Doc. 191-2 at 225:9-22, Doc, 196 at
6   140:6-19.)  The Preliminary Injunction can reasonably be read to permit such conduct,
7   and accordingly Swope cannot be punished for engaging in it.

8           **B.   Misleading Plaintiff**

9           Plaintiff also contends that Swope should be held in contempt for violating the
10  Preliminary Injunction's provision on negotiating in good faith a new employment
11  opportunity with Plaintiff.  Swope presented Plaintiff with a job description from a
12  Wham-O company (Doc. 191-4), sought approval from Plaintiff (Doc. 191-5), and
13  created a Linked-In profile advertising himself as the Sustainability Director at Wham-O
14  (Doc. 191-6).  However, Aguilar, the CEO of Wham-O Marketing, Inc. (*see* Doc. 196 at
15  20:9-10), clarified that he did not authorize the job description and that Wham-O did not
16  have a Sustainability Director.  (*Id.* at 89:4-90:14.)  Swope had, however, sought a
17  position leading Wham-O's sustainability efforts and did end up working for Sprig Toys,
18  Inc. and then Sprig Tech, both of which are also led by Aguilar.  (*Id.* at 122:21-24.)
19  Further, Plaintiff received notice of Swope's employment situation soon after Swope
20  began working for Sprig Toys, Inc.  (Doc. 196-1.)  Plaintiff's evidence could lead to the
21  reasonable inference that Swope did not negotiate in good faith regarding his
22  employment; however, the evidence could also speak to miscommunication and
23  misunderstandings between Aguilar, whose testimony at times lacked clarity, and Swope.
24  That the evidence is susceptible to such an interpretation means that it falls well short of
25  the clear and convincing evidence needed to find Swope in contempt of court.

26          Swope's other purported misrepresentations, including the incorrect date on
27  Swope's affidavit, have little to do with the Preliminary Injunction and more to do with
28  Swope's credibility in general.  As such, any pattern of deception goes to the credibility

1   and merits of Swope's entire case and will not be resolved through the question of

2   contempt at this time.

3        **C.   Destroying evidence**

4        Finally, Plaintiff requests that Swope be held in contempt or face the entry of

5   default judgment for continued destruction of evidence.  Plaintiff presents evidence that

6   Swope instructed others to delete two of his e-mail accounts after the Preliminary

7   Injunction was in place (*see, e.g.*, Doc. 196 at SPRIG004164), thereby violating the

8   Preliminary Injunction.  Swope disputes the charge that he failed to preserve the

9   messages from at least one of those two accounts.

10       Plaintiff's papers fail to make even a threshold showing of the materiality or

11   significance of ostensibly destroyed evidence.  Since Plaintiff's evidence as to any

12   malfeasance by Swope does not suggest that Plaintiff's ability to go to trial is impaired,

13   and since Plaintiff has not sufficiently shown that less drastic sanctions would be

14   ineffective, the entry of default is inappropriate.  *See Leon v. IDS Sys. Corp.*, 464 F.3d

15   951, 958-61 (9th Cir. 2006) (discussing considerations affecting the propriety of a

16   dispositive sanction for spoliation of evidence).  Further, while Swope may well have

17   engaged in misconduct, Plaintiff has not made any showing of the materiality of the

18   purportedly destroyed evidence, let alone the clear and convincing showing required for

19   contempt.

20       Disruption of evidence, although problematic, is not infrequent, and does not

21   warrant a mini-trial about the merits of the litigation proceedings.  Instead, discovery

22   over the course of the litigation will reveal the significance of any destroyed evidence.

23   As discovery approaches completion, the Court will be far better positioned to evaluate

24   the materiality of any destroyed evidence and the extent of any resulting prejudice.  In the

25   Court's discretion, and in order to make a more efficient and better-informed decision,

26   the Court will decline to proceed at this time as to the matter of Swope's alleged

27   destruction of evidence.  Should sanctions later be deemed appropriate, an adverse-

28   inference instruction at trial is generally the principal recourse for the destruction of

1    material evidence.

2        Plaintiff's Motion seeks to litigate a large part of the merits of this action in

3    advance in the guise of a contempt claim.  A contempt motion, however, is not an avenue

4    for bypassing litigation proceedings, and default—one of the most extreme sanctions

5    available—is extraordinarily rarely appropriate when little has been decided as to the

6    merits of the action.  Swope may not have substantially complied with the Preliminary

7    Injunction, but Plaintiff's evidence as to Swope's competition with Plaintiff and his

8    misrepresentations do not establish violations of the Preliminary Injunction by clear and

9    convincing evidence.  If Swope has destroyed evidence, then the Court will address the

10   issue when it is in a position to better contextualize the materiality of that evidence.

11       In addition, Defendant Swope is warned that, although the covenant not to

12   compete that he signed with Plaintiff is facially invalid (*see* Doc. 220), he is still bound

13   by orders of this Court, including the Preliminary Injunction to which he consented.  *Cf.*

14   *United States v. United Mine Workers*, 330 U.S. 258, 293-94 (1947).  Violations of the

15   Preliminary Injunction may yet expose Swope to severe sanctions ranging from an

16   adverse-inference instruction at trial to civil contempt or even the entry of default

17   judgment.

18       **IT IS THEREFORE ORDERED** denying Plaintiff's Second Motion to Find

19   Defendant Troy Swope in Contempt of Court (Doc. 162).

20       **IT IS FURTHER ORDERED** that the competition provision of the Preliminary

21   Injunction (Doc. 38 ¶ 6) will be narrowed in light of the Court's ruling on the validity of

22   the covenants not to compete (Doc. 220).  The parties are directed to submit proposed

23   modified language, jointly if possible and separately if not, on or before Wednesday,

24   August 27, 2013.

25       Dated this 20th day of August, 2013.

26

27   _____

28                    Neil V. Wake
             United States District Judge